## PEOPLE v HUBBARD

1. Criminal Law—Pleas of Guilty—Agreements—Affirmative Acknowledgments—Court Rules.

A plea agreement shall be stated on the record and affirmatively acknowledged by the defendant, defense counsel and the prosecutor whenever a guilty plea is tendered as a result of it (GCR 1963, 785.7[2]).

2. Criminal Law—Pleas of Guilty—Negotiations—Agreements.

A guilty plea was the result of plea negotiations even though the existence of a plea agreement was not expressly referred to in the record by any of the parties, where the prosecutor apparently filed a motion to add the count to which defendant pled guilty, where the trial judge indicated very clearly in the record that he had taken an active part in the negotiations, and where it was stated by the trial judge that a second armed robbery charge was to be dismissed as part of the bargain struck between defendant, the prosecutor, defense counsel, and the court.

3. Criminal Law—Pleas of Guilty—Court Rules—Appeal and Error—Agreements—Terms of Agreements—Stating Agreements on Record—Inferring Agreements on Appeal.

The court rule has been violated and a conviction based on a guilty plea is reversed even though the plea-taking procedure was very nearly perfect and absolutely fair and just, where a plea agreement is evident from the record, although not expressly referred to therein, and where the Court of Appeals cannot be certain that all of the terms of the plea agreement have been included therein; the court rule requires that the plea agreement be stated on the record (GCR 1963, 785.7[2], 785.7[5]).

References for Points in Headnotes

[1–9] 21 Am Jur 2d, Criminal Law §§ 485, 493, 494.

Enforceability of plea agreement or plea entered pursuant thereto, with prosecuting attorney involving immunity from prosecuting for crimes. 43 ALR3d 281.

4. CRIMINAL LAW—PLEAS OF GUILTY—COURT RULES—AGREEMENTS—
   BRINGING AGREEMENTS INTO OPEN—PROTECTING DEFENDANT
   AND PUBLIC.

   The court rule requiring that the terms of a guilty plea agree-
   ment be stated on the record is designed to bring plea agree-
   ments into the open and thereby protect the rights of both the
   defendant and the public (GCR 1963, 785.7[2]).

5. CRIMINAL LAW—PLEAS OF GUILTY—COURT RULES—REQUIREMENTS
   FOR VALID PLEA—MANDATORY REQUIREMENTS.

   Strict adherence to the requirements for a valid guilty plea, set
   forth specifically in the court rule, is mandatory, and neither
   substantial compliance with the court rule nor the absence of
   prejudicial error will be deemed sufficient (GCR 1963, 785.7).

6. CRIMINAL LAW—PLEAS OF GUILTY—COURT RULES—PURPOSES OF
   COURT RULE—FRUSTRATION OF PURPOSES—AGREEMENTS—AFFIR-
   MATIVE ACKNOWLEDGMENTS.

   The purposes of the court rule insuring the voluntariness of
   guilty pleas will be frustrated unless the Court of Appeals can
   be certain that all of the terms of a plea agreement are stated
   on the record and affirmatively acknowledged by the parties
   thereto (GCR 1963, 785.7[2]).

7. CRIMINAL LAW—PLEAS OF GUILTY—COURT RULES—COMPLIANCE
   WITH COURT RULES—RESPONSIBILITIES OF TRIAL JUDGE.

   The trial judge has responsibility to make certain that the court
   rule for insuring the voluntariness of a guilty plea is complied
   with (GCR 1963, 785.7, 785.7[2]).

8. CRIMINAL LAW—PLEAS OF GUILTY—COURT RULES—PROSECUTORS—
   DEFENSE COUNSEL—OBLIGATION TO ASSIST COURT—VOLUNTARI-
   NESS OF PLEA—PROPER PROCEDURES.

   The prosecutor and defense counsel owe an obligation to assist
   the trial judge in the discharge of his duties under the court
   rule for insuring the voluntariness of a guilty plea; the Court of
   Appeals does not condone the practice of watching and waiting
   silently for reversible error to be created in an otherwise error-
   free hearing; trial counsel must insist that proper procedures
   be followed so that the wasteful and needless parade of those
   guilty-plea appeals based on purely technical mistakes in plea-
   taking can be eliminated (GCR 1963, 785.7[2]).

9. CRIMINAL LAW—PLEAS OF GUILTY—COURT RULES—AGREEMENTS—
   COMPLIANCE WITH COURT RULES—PROPER PROCEDURES.

   A trial judge, prior to accepting a guilty plea, must insist that all
   terms and conditions of a plea agreement are disclosed, by

asking the defendant, defense counsel, and the prosecutor to state the terms and conditions of the agreement on the record, by inquiring whether there are any other terms and conditions not yet disclosed and requiring a unanimous negative reply to that question on the record, by restating the terms and conditions of the plea agreement to make certain that everyone understands what they are, and by requiring the defendant, defense counsel, and the prosecutor to affirmatively acknowledge the plea agreement by answering "yes" to the question "Does the plea agreement, with all of the terms and conditions as stated, represent the plea agreement you have entered into and the same plea agreement which forms the basis of the guilty plea in this case?" (GCR 1963, 785.7[2]).

Appeal from Recorder's Court of Detroit, John R. Murphy, J. Submitted Division 1 October 9, 1974, at Detroit. (Docket No. 19109.) Decided January 8, 1975.

William Hubbard was convicted, on his plea of guilty, of assault with intent to rob being armed. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Arthur N. Bishop,* Assistant Prosecuting Attorney, for the people.

*Beverly Clark,* for defendant on appeal.

Before: DANHOF, P. J., and BRONSON, and O'HARA,* JJ.

BRONSON, J. Defendant pled guilty in Detroit Recorder's Court on September 6, 1973 to the

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

charge of assault with intent to rob being armed, MCLA 750.89; MSA 28.284, was sentenced on October 2, 1973 to a term of from 8 to 15 years in prison, and now appeals as of right. He raises one issue which merits discussion. It requires an analysis of the plea taking procedures set forth in GCR 1963, 785.7(2).

Defendant insists that his plea-based conviction must be reversed because the trial judge failed to adequately comply with the requirements of GCR 1963, 785.7(2). Since defendant's plea was entered after June 1, 1973, the effective date of amended rule 785, the provisions of the new rule apply. GCR 1963, 785.7(2) provides:

"Insuring the Plea is Voluntary. The court shall not accept a plea of guilty or nolo contendere without personally addressing the defendant and determining that the plea is freely, understandingly and voluntarily made. *If the tendered plea is the result of an agreement between the prosecutor and the defendant or his lawyer regarding the entry of a plea, the agreement shall be stated on the record and affirmatively acknowledged by the defendant, his lawyer and the prosecutor."* (Emphasis supplied.)

The Supreme Court has thus ordered that whenever a guilty plea is the result of a plea agreement, "the agreement shall be stated on the record". In the case at bar, defendant was originally charged with armed robbery. He pled guilty to the reduced charge of assault with intent to rob being armed, upon motion filed by the prosecutor.[1]

---

[1] *"The Court:* What is your pleasure Mr. Lorence?

*"Mr. Lorence:* Your Honor, I have consulted with my client. He wishes to withdraw the plea of not guilty to the charge of robbery armed and tender a plea to the included offense of robbery unarmed.

*"The Court:* No, assault with intent to rob while being armed is what I understand *it* to say." (Emphasis supplied.)

Apparently the underlined pronoun refers to a motion by the prosecutor to reduce the charge.

Though the existence of a plea agreement is not expressly referred to in the record by any of the parties,[2] we are convinced that this plea was the result of plea negotiations. The prosecutor, though not present when the plea was taken,[3] apparently filed a motion to add the count to which Hubbard pled guilty. The trial judge indicated very clearly in the record that he had taken an active part in the negotiations.[4] In addition, it is stated by the trial judge that a second armed robbery charge was to be dismissed as part of the bargain struck between defendant, the prosecutor, defense counsel, and the court.[5] It appears that the guilty plea to the added count, coupled with the promise of a 15-year maximum sentence and the dismissal of the other armed robbery charge constitute at least some of the "terms" of a plea agreement in this case. Defendant does not suggest that the bargain he struck has not been kept. It is clear from the record that he understood and acknowledged the terms that are mentioned. We would, other things being equal, affirm Hubbard's conviction summarily, because the plea procedure followed in this case was in every important respect true to both the letter and the spirit of GCR 1963, 785.7.

However, we cannot be certain that all of the terms of the plea agreement have been included in the record. We are convinced that the Supreme

---

[2] *Compare People v Leonard,* 51 Mich App 368; 214 NW2d 888 (1974), and *People v Aleman,* 55 Mich App 445; 222 NW2d 771 (1974).

[3] We have difficulty with the idea that a prosecutor could "affirmatively acknowledge" a plea agreement under such circumstances.

[4] *"The Court:* But I told your lawyer that I would impose a sentence of not more than 15 years in prison, right?

*"Mr. Hubbard:* Yes."

[5] *"The Court:* Okay. Now I understand that the other one is to be dismissed * * * . We will hold that one for dismissal on the date of sentencing."

Court, in requiring plea agreements to be "stated on the record and affirmatively acknowledged" has mandated a more searching and complete inquiry than that carried out in this case. We cannot speculate about what other terms may have been included in the plea agreement in this case, not only because the possibilities are numerous[6] but more importantly because GCR 1963, 785.7(2) requires that the plea agreement be stated on the record, not inferred by an appellate court on review of that record.

The court rule is designed to "[bring] plea agreements into the open", *People v Palmer,* 55 Mich App 43; 222 NW2d 26 (1974), in an attempt to protect the rights of both the defendant and the public. By making it clear that the tendered plea is the result of a plea agreement, and by setting forth the terms of that agreement on the record, the defendant's interest in having his agreement and all attendant promises enforced is recognized. *See Santobello v New York,* 404 US 257; 92 S Ct 495; 30 L Ed 2d 427 (1971).[7] On the other hand, such a procedure will prevent a defendant from later falsely claiming that the agreement has not been kept or that it consists of different terms. Direct and collateral attack will thereby be discouraged.[8] The benefit that the bargain brings for

[6] *E.g.,* agreement by the defendant to testify in other cases, agreement by the defendant to provide information relevant to other prosecutions, agreement by the prosecutor to refrain from prosecuting on other possible charges, agreement by the prosecutor to make sentence recommendations, agreement by the prosecutor to make recommendations to other prosecutorial and correctional officials with whom the defendant may be involved.

[7] We note parenthetically that awareness of the terms of a plea agreement will also permit enforcement of the mandate of *People v Butler,* 43 Mich App 270; 204 NW2d 325 (1972), which forbids the use of waiver of the right to appeal as a condition to a guilty plea.

[8] *See Boykin v Alabama,* 395 US 238, 244; 89 S Ct 1709, 1713; 23 L Ed 2d 274, 280 (1969).

the public—a conviction capable of withstanding the stiff test of appellate review—will be assured.

We recognize and support the important purposes served by making certain that the terms and conditions of all plea agreements and the required acknowledgments are made an explicit, recorded part of the plea proceedings. We are convinced that substantial compliance with the various requirements of GCR 1963, 785.7 would more than amply effectuate those purposes, and we feel that the trial judge in this case more than substantially complied with the rule. However, we are not at liberty to disregard the plain and simple fact that the Supreme Court has ruled that substantial compliance is insufficient:

"The procedure and practice under subrule 785.7 is *mandatory* and *failure to comply therewith constitutes reversible error."* GCR 1963, 785.7(5). (Emphasis supplied.)

Our conclusion is reinforced by the recent order entered by the Supreme Court in *People v Shekoski,* 393 Mich 134:

"On order of the Court, defendant-appellant's application for leave to appeal is considered, and the same is hereby granted. The requirements for a valid guilty plea after June 1, 1973 are set forth specifically in GCR 1963, 785.7. The bench and bar are hereby advised that strict adherence to those requirements is mandatory and that neither substantial compliance nor the absence of prejudicial error will be deemed sufficient. GCR 1963, 785.7(5).

"The Court, *sua sponte,* pursuant to GCR 1963, 865.1(7), reverses the decision of the Court of Appeals and remands the case to the Macomb County Circuit Court for a new trial."

In that case the defendant, his attorney, and the

prosecutor negotiated a plea of guilty to a reduced charge in the middle of defendant's jury trial on the original charge. The plea was accepted by the trial judge only after conducting what another panel of our Court found to be, and what upon re-examination we now agree was, a hearing which carefully followed the guidelines enunciated in GCR 1963, 785.7. The trial judge did not advise Shekoski that by his plea of guilty he waived the right to trial by the court. GCR 1963, 785.7(1)(d)(i). However, we would conclude, absent this Supreme Court order to the contrary, that Shekoski waived that right when he elected to be tried by a jury. *Cf. People v Haddad,* 306 Mich 556; 11 NW2d 240 (1943). It can hardly be said to be error to fail to advise someone of a right they do not possess.

An independent examination of the plea transcript in *Shekoski* does not enlighten us as to what error was determined by the Supreme Court to require reversal. Absent any guidance on that question, we feel obliged to inform the bench and bar that nothing less than absolute perfection is required in the taking of guilty pleas.

More to the point here, the Supreme Court apparently has determined that unless we can be *certain* that all of the terms of a plea agreement are stated on the record and affirmatively acknowledged by the parties thereto, the purposes of the rule will be frustrated.

Accordingly, for the benefit of both bench and bar, we will indicate how the rule should be complied with, in order that the impact of GCR 1963, 785.7(5) might be avoided.

What must be stated on the record and whose responsibility is it to see that this is done? These questions are not free from doubt,[9] since the Su-

---

[9] *See People v Aleman, supra,* fn 2.

preme Court has failed to provide clear guidance in the rule. We urge that the following procedure be utilized in order to meet its demands.

First, we believe it must be the trial judge's responsibility to make certain that the rule is complied with. Rule 785.7 generally gives the trial judge the responsibility for insuring that its practice and procedure is strictly obeyed. See GCR 1963, 785.7(1); 785.7(3); 785.7(4). More particularly, the trial judge is required in rule 785.7(2) to personally address the defendant to determine whether the plea is voluntary. The next sentence of that subrule, describing the requirement that the plea agreement be stated on the record, does not expressly place the responsibility for so doing on the trial judge. However, the fair implication of the first sentence in rule 785.7(2), the general nature of the entire plea procedure as described in 785.7, and the purposes the rule is designed to serve—as outlined above—force the conclusion that the trial judge be charged with the responsibility to see to it that all plea agreements are stated on the record. In so doing, we do not mean to absolve trial counsel of all responsibility in the plea proceedings or to condone the practice of watching and waiting silently for reversible error to be created in an otherwise error-free hearing.

On the contrary, we cannot emphasize strongly enough our conviction that defense counsel and prosecutor alike owe an obligation to assist the trial judge in the discharge of his duties under the court rule. Trial counsel must insist that proper procedures be followed so that the wasteful and needless parade of those guilty plea appeals based on purely technical mistakes in plea taking—appeals which now threaten to overwhelm this Court —can be eliminated.

In order to adequately discharge his obligation, the trial judge should insist that *all* terms and conditions of the plea agreement be disclosed by the parties. He should make certain that all terms and conditions are disclosed by *asking,* on the record, each party—the defendant, defense counsel, and the prosecutor—what those terms and conditions are. He should, to be absolutely sure, inquire whether there are any other terms and conditions not yet disclosed, and require a unanimous negative reply to that question, again on the record, before proceeding further.

Once the parties have stated the terms and conditions of the plea agreement, the trial judge should then *restate* them to make certain that everyone understands what they are. At this point, the trial judge should then require each party— "defendant, his lawyer, and the prosecutor"—to "affirmatively acknowledge" the plea agreement as stated, by demanding that each of them answer "yes" to the following question:

"Does the plea agreement, with all of the terms and conditions as stated, represent the plea agreement you have entered into and the same plea agreement which forms the basis of the guilty plea in this case?"

If this procedure is followed, the guilty plea conviction will be insulated from error on appeal, at least so far as rule 785.7(2) is concerned. We appreciate that its stilted, rather artificial, *pro forma* nature will be unsatisfying and unacceptable to many. However, to ignore it will spell disaster. The Supreme Court has ordered mandatory compliance with GCR 1963, 785.7. The Supreme Court has also held, in *People v McMiller,* 389 Mich 425; 208 NW2d 451 (1973), that upon reversal of a plea-based conviction, a defendant can be

charged with an offense no greater than that to which he previously *pled guilty.* We are obliged to enforce both of these rulings, even though we disagree with them. In order to avoid the harsh result created by *McMiller,* we urge the trial bench to strictly and carefully adhere to the procedure outlined herein. We support and commend to all guilty plea participants the suggestion recently made by Judge, former Justice, O'HARA in *People v King,* 57 Mich App 514; 226 NW2d 544 (1974):

"Even the most experienced airline pilots run through a checklist before each takeoff. Mayhaps our trial bench must resort to a checklist also."

We re-emphasize that the only reason we cannot affirm what we consider to be a very nearly perfect, and absolutely fair and just plea-taking proceeding is that the Supreme Court, in enacting GCR 1963, 785.7, has ordered us to act otherwise. We are *forced* to hold that GCR 1963, 785.7(2) has been violated. Pursuant to GCR 1963, 785.7(5) we are also constrained to reverse.

Reversed and remanded for proceedings not inconsistent with this opinion.

All concurred.